UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| J.H., a minor, by and through his parents | ) | CASE NO.: |
| and next friends, Denise and James Hayes | ) | |
| 615 Orchard Drive | ) | JUDGE |
| Mansfield, Ohio 44904 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DENISE HAYES, Individually | ) | |
| 615 Orchard Drive | ) | |
| Mansfield, Ohio 44904 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMES HAYES, Individually | ) | |
| 615 Orchard Drive | ) | **COMPLAINT** |
| Mansfield, Ohio 44904 | ) | **Jury Demand Endorsed Hereon** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEXINGTON LOCAL SCHOOL | ) | |
| DISTRICT BOARD OF EDUCATION | ) | |
| C/O, Michael Ziegelhofer, Superintendent | ) | |
| 103 Clever Lane | ) | |
| Lexington, Ohio 44904 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL ZIEGELHOFER | ) | |
| 103 Clever Lane | ) | |
| Lexington, Ohio 44904 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BUDDY E. MILLER, JR. | ) | |
| 155 Castor Road | ) | |
| Lexington, Ohio 44904 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |

LAURA WESSERLING )
1057 Sunset Blvd. )
Mansfield, Ohio 44907 )
)
and )
)
MARY SUE DAVIS )
16 Cambridge Court )
Lexington, Ohio 44904 )
)
                        Defendants. )
)

Plaintiffs, Denise and James Hayes, individually, and as natural parents and guardians of J.H., a minor, (collectively, "Plaintiffs") for their complaint against Defendants Lexington Local School District Board of Education, Michael Ziegelhofer, Buddy E. Miller, Jr., Laura Wesserling and Mary Sue Davis state as follows:

## **INTRODUCTION**

1.      The Plaintiffs are J.H., a multi-handicapped, non-verbal, largely wheelchair ridden child suffering from autism and cerebral palsy, and Denise and James Hayes, J.H.'s parents.  Children like J.H. are among the most vulnerable members of our community.  While they experience love, joy, hurt and pain as we all do, their difficulty in communicating make them especially vulnerable, particularly when it comes to abuse. This is a case of a school employee, her supervisors and the school district exploiting that vulnerability to physically abuse J.H. and to cover-up that abuse so it would never see the light of day.

2.      J.H., while immobile in his wheelchair, was violently hit in the face with a clipboard.  When on the classroom floor, he was grabbed from behind by his hair and his head smashed into the ground.  When restrained, J.H. was violently slapped in the face.  All this abuse was foisted on J.H. by a school employee, not for any educational or pedagogical purpose, but to

hurt and to punish. The school district, school principal and school superintendent knew of the abuse, but did nothing. They did not investigate, did not report, but instead, allowed the student to continue to return to his school abuser daily, placing him in substantial risk of suffering more and more violent abuse.

3.     This is a case of abuse of our most vulnerable and cover-up by those persons and institutions called upon to safeguard and protect our most vulnerable.

4.     J.H. and his family come to this Court to seek justice for the unconscionable and unconstitutional suffering J.H. was forced to experience and endure.

## PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff J.H., a minor, is a resident of Richland County, Ohio and, at all relevant times herein, was a multi-handicapped, special education student attending Eastern Elementary School ("Eastern") located in Richland County, Ohio and operated and maintained by Defendant Lexington Local School District Board of Education.

6.     Plaintiff Denise Hayes, mother, guardian and next friend of Plaintiff J.H. is a resident of Richland County, Ohio.

7.     Plaintiff James Hayes, father, guardian and next friend of Plaintiff J.H. is a resident of Richland County, Ohio.

8.     Defendant Lexington Local School District Board of Education ("Lexington" or "District") is an entity operating under the laws of the State of Ohio and is authorized to sue and be sued as an entity for its acts and those of its agents and employees. The District has its principal place of business in Richland County, Ohio.

9.     Defendant Michael Ziegelhofer ("Ziegelhofer") is and, at all relevant times, was employed by the District as the Superintendent of all Lexington City Schools, including Eastern,

operated and maintained by the District.  At all relevant times herein, Defendant Ziegelhofer was acting under the color of law and he is being sued in his official and individual capacities, respectively.  Defendant Ziegelhofer is a resident of Richland County, Ohio.

10.     Defendant Buddy E. Miller, Jr. ("Miller") is and, at all relevant times, was employed by the District as the Principal of Eastern.  At all relevant times herein, Defendant Miller was acting under the color of law and he is being sued in his official and individual capacities, respectively.  Defendant Miller is a resident of Richland County, Ohio.

11.     Defendant Laura Wesserling ("Wesserling"), at all relevant times, was employed by the District as an elementary school teacher at Eastern, providing teaching and instruction to one or more severely impaired, multi-handicapped students, including Plaintiff J.H.  At all relevant times herein, Defendant Wesserling was acting under the color of law and she is being sued in her official and individual capacities, respectively.  Defendant Wesserling is a resident of Richland County, Ohio.

12.     Defendant Mary Sue Davis ("Davis"), at all relevant times, was employed by the District as an elementary school teacher's aide at Eastern, providing teaching aide services to one or more severely impaired, multi-handicapped students, including Plaintiff J.H.  At all relevant times herein, Defendant Davis was acting under the color of law and she is being sued in her official and individual capacities, respectively.  Defendant Davis is a resident of Richland County, Ohio.

13.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331 as Plaintiffs are asserting federal claims, including those arising under the United States Constitution and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

14.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), as the Defendants reside within this judicial district, the Defendants transact business within this judicial district and the conduct complained of occurred within this judicial district.

**STATEMENT OF FACTS**

15.     J.H. is a multi-handicapped, special education student.  He has a diagnosis of Phelan McDermid Syndrome (22Q13 deletion), cerebral palsy and suffers from developmental delays, including autism, fine motor and gross motor delays, pica and febrile seizures.

16.     J.H. is transported in a wheelchair pushed by an adult and is able to move on his own only by crawling or scooting on the floor. He does not ambulate or stand. He is nonverbal and can attempt to communicate only by using facial expressions, gestures, or vocalizations. He is able to finger feed himself and use a sippy cup, but otherwise relies upon an adult caregiver for all daily living activities.

17.     In 2007, at four years of age, J.H. was identified as a student with a disability in the District, making him eligible to receive special education services through an individualized education plan.

18.     Since 2012 and at all relevant times herein, J.H. was assigned to Defendant Wesserling's classroom at Eastern, where he was one of two multi-handicapped, special education students under her instruction and care.

19.     Since 2012 and at all relevant times herein, Defendant Davis was a teacher's aide assigned to Defendant Wesserling's classroom to assist with the care and instruction of, among others, J.H.  Her duties included performing educational assignments and being responsible for the physical care and well-being of J.H., including changing, feeding and transporting him as necessary.  Often times, her responsibilities required her to be alone with J.H.

20.     On or around May 23, 2016, Defendant Ziegelofer received an anonymous letter dated May 17, 2016 from a parent of an Eastern student reporting a violent physical assault on a handicapped student by an Eastern staff member. The email stated:

> Dear Mr. Zigelofer [sic],
>
> Early in the week I was walking into Eastern Elementary before school started when I saw something that upset me greatly.  I witnessed one of your staff members hit a boy in a wheelchair on the head with a clip board.  My own child did not know the staff person's name but said she often is in the parking lot while the buses come in and said she works in the handicap class.  I do not know her name and all I can tell you is that she has short dark hair.  I was shocked at what I saw and thought administration should be aware of what staff is doing when they think they are not being watched.  I hope you look into this matter as it upset me and my child.
>
> Sincerely a concerned parent.

21.     On May 23, 2016, Defendant Ziegelofer forwarded the abuse report/letter to Defendant Miller. Yet Ziegelofer took no other action whatsoever concerning this report of a violent assault on a by a staff member on a handicapped elementary school student.

22.     Defendant Miller immediately responded to Ziegelofer stating, "I am sure which aide the parent is referring to."  He knew that the assailant was Defendant Davis.  Defendant Miller knew or should have known that the victim of the assault was Plaintiff J.H.

23.     On or around May 17, 2016, Defendant Davis, in fact, assaulted a special needs, wheelchair-ridden student by violently striking him in the head with a clipboard.  That child was Plaintiff, J.H.  He was then twelve years old.

24.     Defendant Ziegelofer did not give any instruction, directive or guidance to Defendant Miller on how to address the claim of abuse by a staff member against a student.

25.     Defendant Miller did not know and did not learn and did not inquire on how properly to address the claim of abuse against a student.

6

26.     Defendant Miller claimed he asked Defendant Davis whether she hit any student with a clipboard and further claimed that Defendant Davis denied any wrong doing.  He asked the assailant whether she committed a crime on a child.  Defendant Davis denied the assault and Defendant Miller believed her, and later stated: "That was it.  Not much else I could do."  Other than blindly believing the abuser, Defendant Miller did nothing further with respect to the assault on J.H.

27.     Neither the District, Defendant Miller nor Defendant Ziegelofer undertook any other action, investigation, inquiry or follow-up regarding the assault on J.H. by Defendant Davis.  Defendants Miller and Ziegelofer never even followed up with one another about the assault on a student in their charge.

28.     Even though District, Defendant Miller and Defendant Ziegelofer knew or should have known that the assailant was Defendant Davis and the victim was J.H., these Defendants, failed to report the assault by Davis on J.H., failed to take any action against Davis, failed to inform J.H.'s parents of the assault by Davis on their child, and failed to undertake any action to ensure that J.H. was safe from abuse and mistreatment by Davis.

29.     Despite having suspicions and knowledge of the assault by Davis on J.H., neither Ziegelofer nor Miller reported their suspicions or the fact of the assault to Richard County Children Services, any public agency or to a municipal or county peace officer.

30.     Instead, the Defendants concealed and kept hidden the assault on J.H. and allowed Defendant Davis to continue in her employment at Eastern, including as a teacher's aide over Plaintiff J.H.  The Defendants returned a special needs, wheelchair ridden, non-verbal child afflicted with autism and cerebral palsy to his abuser.

7

31.     Even before receiving actual notice of Defendant Davis assaulting J.H. in May 2016, Defendants were on notice of Defendant Davis' negligent and poor performance of her professional responsibilities and duties to J.H.

32.     In the Spring of 2016, Defendant Wesserling reported to Defendant Miller that Davis, during the performance of her professional duties, had exhibited confusion and forgetfulness.  She had left J.H. unattended, resulting in J.H. crawling and scooting out of the resource classroom, into the school hallway and entering into an adjacent office.

33.     Defendant Davis told Wesserling she failed certain neurology tests, which demonstrated she had early signs of dementia. Shortly before the beginning of the 2016 school year, Defendant Wesserling notified Defendant Miller about Davis' health concerns.  Wesserling further reported to Miller that Davis had exhibited difficulty in grasping things with her hands and difficulties in lifting a now thirteen year old J.H. on to the changing table.

34.     Despite these reported concerns about Defendant Davis and knowledge of her prior abuse of J.H., Defendants stayed the course, failed to take any action or undertake any investigation concerning Davis or protection and physical well-being of J.H., continued to allow Davis to work as a teacher's aide, and allowed the abuser to continue her every day contact, often alone, with J.H.

35.      As a result, Defendants' utter knowing failure to take any action concerning Defendant Davis and allowing her to come into daily contact with J.H., Defendant Davis assaulted a helpless and defenseless J.H. on at least two other occasions.

36.     On or around September 30, 2016, Defendant Davis and J.H. were alone in the classroom.  J.H. was sitting on the ground making loud sounds as he was watching cartoons on television. Defendant Davis grew increasingly and unreasonably angry at J.H.  She walked from

across the room at her desk to directly behind J.H. She forcefully grabbed J.H.'s face from the back, squeezed and covered J.H.'s mouth, roughly pushed his face to the ground and grabbed and pulled J.H's hair, ultimately causing him to forcefully fall backwards.

37.     This assault was captured on video. Defendant Wesserling suspected that Defendant Davis was mistreating and inattentive to J.H. Wesserling set up her smartphone to record Defendant Davis' actions when she was alone with J.H. Yet, despite her suspicions of neglect and mistreatment and despite possessing the recording of the assault, Defendant Wesserling did not immediately report either her suspicions or the fact of the assault to a public children services agency or a municipal or county peace officer.

38.     Wesserling also failed to inform J.H.'s parents about her suspicions of Davis' negligence toward and mistreatment of J.H.

39.     On or around October 17, 2016, Defendant Wesserling left J.H. in the classroom alone with Defendant Davis for less than three minutes. She returned to find J.H. upset and crying, with red marks and splotches on his face. Defendant Davis did nothing to pay any care or attention to J.H. Instead, Davis remained away from J.H., sitting at her desk, with her back towards J.H. and ignoring J.H. and his condition. When Wesserling asked about what happened, Davis responded angrily with profanities, exclaiming how was she to know.

40.     As a result of this event, Defendant Wesserling had further concerns and suspicions that Davis mistreated J.H., was inattentive to J.H. and was failing in her responsibilities to J.H.

41.     Wesserling reported this event and her suspicions of Davis to Defendant Miller on the same day. She told Miller that she was concerned about leaving J.H. alone with Davis. Wesserling approached Miller again the following morning with the same concern and wanted

9

some action to be taken. On both occasions, Miller responded to Wesserling by stating until someone actually sees something happening, some mistreatment, abuse or neglect by Davis directed to J.H., that there is nothing the he or the school could do.  However, Miller agreed that Davis should not be left alone with J.H.  Yet, neither Miller nor Wesserling reported these suspicions of neglect and mistreatment to a public children services agency or a municipal or county peace officer.

42.     Neither Miller nor Wesserling reported these suspicions of neglect and mistreatment to J.H.'s parents.

43.     On or around October 20, 2016, Defendant Davis again assaulted a defenseless, helpless and, this time, restrained J.H. This assault was yet again captured on video.

44.     Wesserling placed J.H. in a stander, a device used to assist J.H. stand up and to support him to strengthen his limbs, while working on his gross motor skills.  Davis was also in the classroom with Wesserling and J.H.  Wesserling went to the restroom, intending to leave J.H. for only a very brief time.

45.     Yet, as Wesserling remained suspicious of Davis and told Miller she would not leave Davis alone with J.H., Wesserling pressed record on her tablet, which was already set up facing J.H. on the stander.

46.     Wesserling then had to attend to other matters for other students and, as a result, Davis found herself alone with J.H. for over ten minutes.  The video revealed unconscionable abuse.  Davis slapped J.H. across the face and violently grabbed, pinched and squeezed his nose. Wesserling saved two still pictures of the abuse.

47.     Wesserling immediately reported to Miller that she had a video of Davis assaulting J.H.  However, Miller refused to view the video.

48.     Wesserling left the tablet charging in her classroom.  The following morning, Wesserling tried to meet Miller to show him the abuse video, but the video had been deleted either by Miller and/or other another employee or agent of the District.

49.     On October 24, 2016, Wesserling asked Miller whether she should report the assault on J.H. to Children's Services.  Miller instructed Wesserling not to contact Richland County Children's Services until he had an opportunity to discuss the issue with Defendant Ziegelofer. He further instructed Wesserling not to call Children's Services and told her if an when such a call was to be made that he would do it.

50.     The District had a custom, practice and/or unwritten policy in place, in contravention of Ohio law on reporting requirements for suspected abuse and neglect of special needs and/or disabled students.  The District's custom, practice and/or unwritten policy required teachers who suspected abuse and/or neglect to contact their immediate supervisor or other supervisory administrative personnel about the abuse/neglect, and not directly report such suspicion (or actual knowledge of abuse/neglect) to Children's Services, law enforcement, and parents.

51.     Instead, the District's custom, practice and/or unwritten policy provided that such determinations on when and if to report knowledge or suspicion of abuse and/or neglect were left solely to the discretion of supervisory staff and, in particular, the particular school's administration and the Superintendent of the District.

52.     Neither Ziegelofer nor Miller took any action concerning the assaults by Davis on J.H.  They did not contact the police, emergency services, Richland County Children's Services or in any way report Davis' crime.  They failed even to notify J.H.'s parents.

53.     On the morning of October 26, 2016, Wesserling anonymously reported the assault on J.H. to Richland County Children's Services.  Only after Wesserling made this report did Miller decide to view the video of the September assault.  Only after Wesserling's report did Ziegelofer decide to contact the police concerning the assaults on J.H. Only thereafter did the Ziegelofer notify the J.H's parents about the abuse their son was forced to suffer in the September 2016.

54.     Neither Wesserling, Miller, Ziegelhofer nor any other District employee or agent report any other abuse, including the Davis' abuse or J.H. in May and October 2016 to the appropriate authorities, including Children Services, or to J.H.'s parents.

55.     After Wesserling made the report concerning the assault J.H. to Children's Services, Miller told Wesserling that he and Ziegelofer had suspected that Davis abused J.H. because they received the May 2016 anonymous report of abuse from a concerned parent.

56.     Despite having both suspicions and knowledge of Defendant Davis assaulting J.H. no later than May 2016, as a part of their concerted efforts to keep the abuse hidden from J.H.'s parents, law enforcement and Children's Services, Miller and Ziegelofer never notified J.H.'s parents of the May 2016 anonymous letter or of the assault on JH.

57.     On December 2, 2016, the District sent a letter to Davis stating that she abused, neglected or otherwise mistreated J.H. on September 30, 2016, October 20, 2016 and on another occasion for which no date was stated.

58.     Facing the prospect of termination, Davis resigned on her position at Eastern effective December 4, 2016.

59.     Despite all the evidence demonstrating the multiple assaults by Davis on J.H., the city and/or county law departments with jurisdiction over the matter declined to file any criminal charges against Davis.

60.     The District, after conducting a hearing, terminated Wesserling in June 2017.

61.     Had the District and its agents, including, without limitation, Miller and/or Ziegelofer, timely reported and notified and not kept hidden from J.H.'s parents, Richland County Children's Services, and/or law enforcement, the May 2016 abuse and assault by inflicted by Davis on J.H., then J.H. would not have been subject to further abuses and assaults by Davis.

62.     Instead, the District and its agents, including, without limitation, Miller and/or Ziegelofer, concealed the assault and abuse of a multi-handicapped, non-verbal, special needs, autistic 12-year old student, hoping that as J.H. is largely unable to communicate, the abuse would never see the light of day, and the District and its offending agents would skirt liability.

63.     The manner in which Defendants treated J.H., including Davis' physical abuse of J.H., the manner in which Defendants failed to and were deliberately indifferent to any investigation into and reporting of the abuse on J.H., and how they affirmatively sought to cover-up the District and its agent's misconduct, was different and unequal to how the same matters would be handled with respect to a student who was not a special needs, non-verbal, multi-handicapped student.

64.     This difference in treating and handling suspicions and knowledge of abuse by Defendants was based solely on the fact that J.H. was a special needs student, unable to verbalize the abuse and suffering he was forced to endure.

65.     J.H. was forced to suffer and to endure additional physical abuse at the hands of Defendant Davis, which the District and its agents, including the individually named Defendants, knew, should have known and/or intentionally disregarded or concealed and failed to report.

66.     J.H. was caused to suffer a bloody nose on at least three separate occasions in the Spring of 2016.  On one of those occasions, J.H. was caused to be covered with blood.  J.H. was caused to suffer two separate instances of seizures, one in the Spring of 2016 and the other in September 2016.  Prior to these instances, J.H. had not had a seizure for many years.  One or more agents of the District caused J.H. to suffer these injuries through one or more instances of abuse, which was never suspected or contemplated by Plaintiffs until the other assaults and abuses of J.H. came to light.

67.     Plaintiffs reasonably and in good faith believe other instances of abuse and assault against J.H. have been concealed and should be revealed in the course of discovery in this matter, all of which could have and should have been prevented by the District, Miller and Ziegelofer.

68.     As a result of the abuse J.H. was forced to suffer and the District's intentional and/or negligent failures to report the abuse, J.H. and his parents were caused damages in an amount to be proven at trial.

## COUNT ONE
### (42 U.S.C. §1983 - Denial of J.H.'s Fourth Amendment Rights by Use of Excessive Force)

69.     Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

70.     J.H. has a constitutional right secured by the Fourth Amendment of the Constitution of the United States to be safe and secure in his personhood and to be free from suffering the use of excessive force by a state actor.

71.     At all relevant times, Defendants Ziegelofer, Miller, Wesserling and Davis were state actors and employed by the District and all Defendants were acting under the color of law as contemplated under 42 U.S.C §1983.

72.     Defendant Davis deprived J.H. of his constitutional rights to be free from being subject to the use of excessive force as guaranteed to him by the Fourth Amendment of the United States Constitution, when she, as heretofore stated in this Complaint, violently assaulted and abused J.H. on multiple occasions, including, without limitation, on May 17, 2016, September 30, 2016 and October 20, 2016.

73.     As a direct and proximate result of the above-described violations of J.H's constitutional rights secured by the Fourth Amendment of the United States Constitution, J.H. has suffered damages in an amount to be proven at trial.

## COUNT TWO
### (42 U.S.C. §1983 - Denial of J.H.'s Fourteenth Amendment Substantive Due Process Rights)

74.     Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

75.     J.H. has substantive due process rights secured by the Fourteenth Amendment of the Constitution of the United States to personal security and bodily integrity, to be free from arbitrary government conduct, including freedom from the use of excessive force by teachers and administration when in school.

76.     The relationship between J.H. and the Defendants was not voluntary; instead, J.H. was required by law to attend the District's schools in general, where Ziegelofer was Superintendent, and, in particular, Wesserling's class at Eastern Elementary, where Davis was the assigned teacher's aide and Miller the Principal.

77.     Defendant Davis had a significant period of time for deliberation to decide what acts to undertake with respect to J.H. and the assaults and abuses alleged in this Complaint.

78.     Defendant Davis was not pursuing any legitimate governmental purpose, including any legitimate educational, pedagogical or disciplinary purpose or function, when abusing and assaulting J.H., without limitation, on March 17, 2016, September 30, 2016 and October 20, 2016.

79.     As a direct and proximate result of the above-described violations of J.H's constitutional rights secured by the Fourteenth Amendment of the United States Constitution, J.H. has suffered damages in an amount to be proven at trial.

**COUNT THREE**
**(42 U.S.C. §1983 - Denial of J.H.'s and his Parent's**
**Fourteenth Amendment Right to Equal Protection Under the Law)**

80.     Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

81.     Plaintiffs have the right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

82.     Without any lawful basis, Defendants Miller and Ziegelofer treated the Plaintiffs differently than they treated typically developing children, i.e., different and disparate treatment for those children (and their families) suffering from certain developmental difficulties and those

children (and their families) of typically developing children, not suffering from developmental difficulties.

83.     Defendants had no lawful basis to treat Plaintiffs as described in this Complaint, specifically, concerning the abuse suffered by J.H., and how they refused to investigate, to report and to provide notice of that abusive treatment to the J.H.'s parents, Children's Services and law enforcement and to cover-up the assaults on J.H., amounting to ratification of Davis' unconstitutional conduct.

84.     Defendants treat, deal with and respond to suspicions of and actual abuse of typically developing children with timely investigations, timely reporting of abuse and do not cover-up abuse and neglect of children not suffering from developmental difficulties.

85.     Defendants' intentional disparate treatment of the Plaintiffs violated the Plaintiffs' right to equal protection of the laws, as guaranteed them by the Fourteenth Amendment to the United States Constitution, and caused them damage in an amount to be proven at trial.

### COUNT FOUR
**(42 U.S.C. §1983 – Supervisory Liability)**

86.     Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

87.     Defendants Miller and Ziegelofer were responsible and duty bound to train, supervise, review and retain competent employees and agents of the District, including specifically training and supervising Defendant Davis on proper techniques, protocols and procedures on how to manage, handle and protect and provide a safe and abuse-free environment for multi-handicapped, non-verbal students, including J.H., under the District's charge.

88.     In derogation of their duties to protect J.H. and to provide him a safe and abuse-free  environment, Defendants Miller and Ziegolofer  knowingly acquiesced, approved and

ratified Defendant Davis' unconstitutional actions, abuse and assaults on J.H. when:  (a) being deliberately indifferent to training and to supervising sufficiently Davis and other District staff members on the necessary and appropriate procedures and protocols to manage and safeguard multi-handicapped, non-verbal, special needs students like J.H.; (b) being deliberately indifferent to undertaking any substantive investigation into March 2016 witness complaint about a teacher aide assaulting student in wheelchair; (c) being deliberately indifferent to the continued retention of Davis after having suspicions of and knowledge of her assault on J.H. in March 2016; (d) being deliberately indifferent to making any report of suspected or actual abuse against J.H. by Defendant Davis; and (e) attempting to cover-up, thereby ratifying, Davis' unconstitutional conduct by concealing their suspicions and knowledge of Davis' March 2016 assault and abuse of J.H.

89.     The above-described conduct of Ziegelofer and Miller caused J.H. to be subjected to violations of his constitutional rights, guaranteed by the Fourth Amendment, to be free from excessive force at the hands of Davis.

90.     Had Ziegelofer and/or Miller sufficiently trained Davis on the necessary and appropriate procedures and protocols to manage multi-handicapped, non-verbal, special needs students under the District's charge and protection, J.H. would not have suffered the abuse and assaults from Davis.

91.     Had Ziegelofer and/or Miller either undertaken any substantive investigation into the claims of teacher aide assault in the March 2016 letter from a concerned parent, or not continue to retain Davis, or report their suspicions and/or knowledge of abuse to any of J.H.'s parents, Children's Services or law enforcement, J.H. would not have been forced to endure subsequent and continued assaults and abuse by Davis.

18

92.     Defendants Ziegelofer, Miller and/or the District were not pursuing any legitimate governmental purpose, including any legitimate educational, pedagogical or disciplinary purpose or function in their deliberately indifferent actions as set forth above and throughout this Complaint.

93.     These Defendants had a significant period of time for deliberation to decide what acts to undertake with respect to J.H. and the assaults and abuses alleged in this Complaint.

94.     These Defendants caused J.H. to be deprived of his constitutional right to substantive due process, guaranteed by the Fourteenth Amendment, by engaging in arbitrary actions and omissions towards him that were of such an extreme nature, specifically being subjected to multiple assaults and instances of physical abuse, as to shock the conscience under any constitutional test.

95.     As a direct and proximate result of the above-described violations of J.H's constitutional rights secured by the Fourth and Fourteenth Amendments of the United States Constitution, Plaintiffs have suffered damages in an amount to be proven at trial.

## COUNT FIVE
### (42 U.S.C. §1983 - *Monell* Claim for Violations of Fourteenth Amendment Right to Equal Protection Under the Law)

96.     Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

97.     Defendants Ziegelofer and the District, at all relevant times, were responsible for establishing and/or promulgating official rules, policies and practices for the District.

98.     Defendant Miller, at all relevant times, was responsible for establishing and/or promulgating official rules, policies and practices as they pertain to Eastern Elementary School.

99.     Upon information and belief, with respect to claims, suspicions and knowledge of abuse and neglect of students, Defendants Miller, Ziegelofer and the District had an unwritten policy or otherwise tolerated a custom and/or pattern of treating multi-handicapped students and their families differently and disparately than typically developing children, without developmental difficulties.

100.    Such custom, practice, unwritten policy and/or pattern with respect to non-typically developing students includes not investigating or not sufficiently investigating and not reporting or not timely reporting actual or suspected abuse.

101.    As a result of the above-described customs and practices of Defendants Miller, Ziegelofer and the District, Plaintiffs were denied their right to equal protection of the laws, as guaranteed them by the Fourteenth Amendment to the United States Constitution and caused them damage in an amount to be proven at trial.

### COUNT SIX
**(42 U.S.C. §1983 - *Monell* Claim for Deliberate Indifference to Abuse and Assaults on Multi-Handicapped Students and their Families)**

102.    Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

103.    Defendants Miller, Ziegelofer and the District failed, either sufficiently or at all, to promulgate necessary policies and to train and to supervise properly Davis and other employees and agents of the District to prevent Davis' unconstitutional, unlawful and tortious mistreatment of J.H.

104.    These Defendants failed, either sufficiently or at all, to promulgate necessary policies and to train properly Davis, Wesserling and other employees and agents of the District to report child abuse and neglect to the appropriate authorities.

105.     These Defendants failed, either sufficiently or at all, to promulgate necessary policies and procedures to inquire into or to investigate claims of abuse against students attending school in the District.

106.     These Defendants tolerated a custom or otherwise had an unwritten policy or practice requiring employees like Davis, Wesserling and other employees and agents of the District not to report suspected or actual child abuse or neglect to the appropriate authorities. The custom and practice, instead, was required non-supervisory or administrative agents and employees of the District to consult with supervisors about suspected or actual abuse and neglect and leave to the discretion of supervisory personnel whether to report suspected or actual abuse.or neglect.

107.     These Defendants failed, either sufficiently or at all, to supervise Davis and other employees and agents of the District to prevent the unconstitutional, unlawful and tortious mistreatment of J.H.

108.     These Defendants failed, either sufficiently or at all, to promulgate necessary policies and to train supervisory and other employees and agents of the District to ensure that child abusers, like Davis, are not hired and/or retained by the District.

109.     The above-described failures to train, to supervise, to promulgate policies, to tolerate unconstitutional customs and practices and the District's hiring and retention of Davis were all in deliberate indifference to the rights of non-typically developing or, otherwise, multi-handicapped students (and their families), like J.H. and his parents, as guaranteed to them under the laws and Constitution of the United States, including, without limitation, the Fourth and Fourteenth Amendments.

110.     The violations of the Plaintiffs' Fourth and Fourteenth Amendments rights as stated throughout this Complaint were patently obvious or otherwise highly predictable consequences of these Defendants' toleration of unconstitutional customs, their failures to establish necessary policies to protect and safeguard multi-handicapped students in their charge and care, and their failures to train and/or supervise, whether sufficiently or at all, District employees and agents, like Defendant Davis.

111.     These Defendants knew, should have known or otherwise were deliberately indifferent in not knowing of the constitutional violations of the type stated throughout this Complaint of District agent and employees.

112.      There is an obvious need to train employees how to avoid abusing multi-handicapped children and to report abuse when it occurs.

113.     As a consequence of the unconstitutional customs, practices and failures set forth above and throughout this Complaint, Plaintiff J.H. was forced to endure and to suffer the physical mistreatment and abuse by Defendant Davis, which never would have occurred and/or continued, but for these Defendants' acts and omissions.

114.     As a direct and proximate cause of these Defendants' deliberate indifference to the welfare of J.H. and to the training, supervision and customs and practices of the District, Plaintiffs suffered damages in an amount to be proven at trial.

### COUNT SEVEN
### (ASSAULT)

115.     Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

116.     Defendant Davis acted with the intent to create a state of fear or danger of harm or offensive contact in Plaintiff J.H.

117.     Plaintiff J.H. had a reasonable belief that he would be subject to harm or offensive contact by Defendant Davis and experienced fear of such harm or offensive contact as a result of Defendant Davis' actions.

118.     Defendant Davis' conduct was harmful and offensive.

119.     As a direct and proximate cause of Defendant Davis' actions toward Plaintiff J.H., he has suffered damages in an amount to be proven at trial.

## COUNT EIGHT
### (BATTERY)

120.     Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

121.     Defendant Davis, without limitation, on May 17, 2016, September 30, 2017 and October 20, 2016 engaged in the intentional touching of or application of force to J.H. body in a harmful and offensive manner without his consent.

122.     As a direct and proximate cause of Defendant Davis' actions toward Plaintiff J.H., he has suffered damages in an amount to be proven at trial.

## COUNT NINE
### (Intentional Infliction of Emotional Distress)

123.     Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

124.     Defendants' actions and omissions towards the Plaintiffs were intentional and/or reckless and outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and are regarded as atrocious and utterly intolerable in a civilized community.

125.    Defendants intended to cause Plaintiffs severe emotional distress and/or acted with reckless disregard as to the risk that their actions or omissions would cause Plaintiffs severe emotional distress.

126.    Defendants' actions and omissions towards the Plaintiffs were extreme and outrageous and caused Plaintiffs to suffer severe emotional distress beyond that which a reasonable person should be expected to endure.

127.    As a direct and proximate cause of Defendants' actions and omissions towards the Plaintiffs, Plaintiffs have suffered damages in an amount to be proven at trial.

## COUNT TEN
### (Reckless and/or Bad Faith Training, Supervision and Retention)

128.    Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

129.    Defendant's Ziegelofer, Miller and the District knew and/or were in bad faith willfully blind of Davis' May 17, 2016 assault on Plaintiff J. H.

130.    These Defendants actually suspected and/or had reason to suspect that Davis on at least one occasion had abused and/or assaulted Plaintiff J.H.

131.    Despite such actual knowledge and/or actual suspicion and/or willful blindness to the same, these Defendants decided not to undertake any investigation into Davis' assaults against J.H. They intentionally chose not to investigate the witness statement claiming abuse on a wheelchair ridden boy by a school aide.

132.    These Defendants knew that the abuser in the May 2016 anonymous letter was Defendant Davis.

133.    These Defendants knew and/or were otherwise willfully blind to the knowledge that the victim of the abuse in the May 2016 anonymous letter was Plaintiff J. H.

24

134.    Despite these Defendants' actual knowledge and/or actual suspicion of Defendant Davis, these Defendants, in bad faith and in reckless disregard of the safety and well-being of J.H, continued to retain and employ Defendant Davis as a school aide in Wesserling's classroom, providing Davis daily and unfettered access to her abuse victim, J.H.

135.    Despite these Defendants' actual knowledge and/or suspicion of Davis' abuse, they, in bad faith and in reckless disregard of the safety and well-being of J. H., failed to supervise the conduct, acts, activities and omissions of Defendant Davis.

136.    These Defendants, in bad faith and/or in reckless disregard of the safety and well-being of J. H., failed to train and/or further train Defendant Davis on necessary practices, procedures and protocols of maintaining a safe and abuse free environment for J.H.

137.    Despite these Defendants' actual knowledge and awareness of Defendant Davis' experiencing significant confusion and likely early-onset of certain mental disorders, including dementia, Defendants, in bad faith and/or in reckless disregard for the safety and well-being of J.H., allowed Defendant Davis to continue in her job function as being responsible for the health and safety and well-being of J.H., as part of her duties as teacher's aide.

138.    These Defendants' deliberate indifference and bad-faith misconduct, in reckless disregard of the safety and well-being of J.H., resulted in the continued abuse of J.H. by Defendant Davis.

139.    These Defendants' wanton, reckless and bad faith misconduct relative to reporting, training, supervising and investigating actual and suspected abuse against Plaintiff J.H. by Defendant Davis caused Plaintiffs to suffer significant damages in an amount to be proven at trial.

## COUNT ELEVEN
**(Negligence *Per Se* and/or Strict Liability)**

140.    Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

141.    Ohio Revised Code § 2151.421 specifically mandates that the Defendants were to report Davis' conduct and any suspicion of Davis' negligence or abuse directed to Plaintiff J.H. to the appropriate authorities, including to Richland County Children's Services.

142.    Defendants failed, intentionally, recklessly or otherwise, to timely report Davis' conduct to the appropriate authorities.

143.    R.C. 2151.421 imposed that specific and mandatory reporting duty on the Defendants for the safety and protection of the Plaintiffs.

144.    Defendants are strictly liable for failures to report alleged herein under R.C. 2151.421(N).

145.    The Defendants intentionally, recklessly or otherwise failed to comply with the mandates of R.C. 2151.421.

146.    As a direct and proximate cause of the Defendants' intentional and reckless violation of R.C. 2151.421, Plaintiff J.H. has suffered the type of injuries the statute was designed to protect against.

147.    The Defendants' violations of R.C. 2151.421 constitute negligence per se and/or give rise to strict liability for which damages will be proven at trial.

## COUNT ELEVEN
**(Loss of Consortium)**

148.    Plaintiffs incorporate by reference each and every allegation set forth in the foregoing paragraphs as if they were fully rewritten herein.

149.    As a direct and proximate cause of the acts and omissions of the Defendants, Plaintiffs Denise Hayes and James Hayes, as parents and guardians of Plaintiff J.H., have caused to suffer damages arising due to the deprivation of services, society, companionship, comfort, love, solace and affection of J.H.

150.    Plaintiffs Denise Hayes and James Hayes are entitled to recover for their loss of consortium in an amount to be determined at trial.

WHEREFORE, Plaintiffs demands judgment against Defendants, jointly and severally, against Defendants as follows:

1.  Compensatory damages in an amount to be determined at trial, but in excess of $75,000 as to each claim for relief and as to each Plaintiff;

2.  Punitive damages in an amount to be determined at trial for the wrongful acts complained of;

3.  Costs and disbursement incurred in connection with this action, including reasonable attorneys' fees, whether under 42 U.S.C. §1988 or otherwise, expert witness fees and other costs;

4.  Interest, including pre-judgment interest, to the extent available under applicable laws; and,

5.  Such other and further damages and relief as the Court deems just and proper.

Respectfully submitted,

/s/ Aparesh Paul
_____
Joel Levin          (0010671)
Aparesh Paul        (0077119)
Mark Mikhaiel       (0091656)
Levin & Associates Co., L.P.A.
1301 East 9th Street, Suite 1100
Cleveland, Ohio  44114
(216) 928-0600 (telephone)
(216) 928-0016 (facsimile)
jl@levinandassociates.com
ap@levinandassociates.com
mm@levinandassociates.com

Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all the issues so triable.

/s/ Aparesh Paul
_____
Aparesh Paul        (0077119)
*One of the Attorneys for Plaintiffs*